IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
_____ DIVISION

| | | |
|---|---|---|
| RITA D. TOWNSEND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | (JURY TRIAL REQUESTED) |
| | ) | |
| UNIVERSAL PROTECTION SERVICE, LLC | ) | |
| d/b/a ALLIED UNIVERSAL, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT AND JURY DEMAND

The Plaintiff, Rita D. Townsend, by and through her attorney, Bonnie Travaglio Hunt of Hunt Law, L.L.C., hereby complains against the Defendant, Universal Protection Service, LLC d/b/a Allied Universal (hereafter referred to as "Defendant") as follows:

## NATURE OF THE ACTION

1.    This action is brought pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. §2000e, *et seq.*), 42. U.S.C. Section 1981, Age Discrimination in Employment Act, and South Carolina Human Affairs Laws.   The jurisdiction of this Court is invoked to secure protection of and redress deprivation of rights guaranteed by federal law and state law which rights provide for injunctive and other relief for illegal discrimination in employment.

2.    This action is brought pursuant to Federal Law of the United States of America.

3.    This action is brought pursuant to the laws of the State of South Carolina.

## PARTIES

4.    The Plaintiff is an individual who resided in the State of South Carolina at all times relevant to this action.

5.   On information and belief, Defendant is an entity conducting business and affecting commerce in the state of South Carolina properly within the jurisdiction of the Court.

6.   At all times, relevant to the allegations in this Complaint, the Defendant employed more than 20 persons in the State of South Carolina.

7.   At all times, relevant to the allegations in this Complaint, the Defendant operated several facilities in the State of South Carolina.

## JURISDICTION AND VENUE

8.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this matter presents a federal question.

9.   Jurisdiction of this cause arises under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. Section 2000e-2(a) and Section 2000e-3(a), as amended by the Civil Rights Act of 1991 (CRA Section 91), 42 U.S.C. Section 1981A *et seq.* and the Age Discrimination in Employment Act of 1974 (ADEA), 29 U.S.C. Section 626 *et seq.*

10.  The Florence Division is the proper venue for this action pursuant because this is the District and Division in which the Plaintiff resides and in which a substantial part of the events or omissions giving rise to the claims occurred.

## Procedural Prerequisites

11.  The Plaintiff filed a charge of discrimination against the Defendant with the Equal Employment Opportunity Commission (EEOC") alleging Race discrimination and Age Discrimination.

12.  The Plaintiff's charge of discrimination was filed on June 12, 2024, and set forth the following:

   *"I was subjected to disparate treatment including discipline on or about February 29, 2024, and discharged on or about March 1, 2024.*

"I was hired as a third shift exterior rover/security officer for Respondent on or about May 29, 2021. I am a forty-four-year-old African American woman. Respondent's management is predominantly Caucasian. On or about February 29, 2024, the account manager (Caucasian male) wrote me up and placed me under investigation for using the company vehicle for personal use without obtaining advance permission from my supervisor (Caucasian male under age forty). I acknowledged using the vehicle on occasion to pick up food for myself and/or co-workers on shift when traveling offsite. However, I explained this was a common practice among employees for which specific permission from the supervisor had never been required.

"On or about March 1, 2024, Respondent terminated me along with another older (age forty-four) African American security officer for violating the company car policy. However, Respondent did not investigate or terminate any of its younger (under age forty) or Caucasian employees who were known to use the company car for personal use. I was not provided with notice of the alleged policy prior to on or about February 29, 2024. However. upon information and belief, Respondent notified other employees of the new car policy and had them acknowledge the policy but not date their acknowledgment. If the alleged policy was in effect at the time I was disciplined or discharged, it was not equally enforced. Upon information and belief, I was replaced by a younger (aged twenty-five) Caucasian employee. I believe the reason cited for my termination was pretextual, and that I was disciplined and discharged because of my age and race.

"Furthermore, I do not believe I would have been disciplined or discharged had I been a younger or Caucasian employee. Respondent generally treated its younger employees and its Caucasian employees more favorably than its older African American employees. They were allowed to violate serious company policies or accumulate multiple infractions, including infractions following final warnings, without being investigated or terminated. For example, my supervisor and the employee who replaced me were allowed to smoke marijuana on site or come to work high, and the account manager was not disciplined for using the company gas card for personal use. A younger gatehouse officer who was found complicit in employees' theft of company property was transferred to another site instead of discharged. My supervisor allowed a younger (age twenty-five) interior rover and other younger employees to use the company printer for personal use,

*wear whatever they wanted, and leave early. He also gave them priority in scheduling and days off. Respondent also favored younger employees for its first shift positions. I expressed ongoing interest in a first shift position but was never given the opportunity to apply while younger employees hired on working first shift positions that had not been posted as vacant. When I asked the site supervisor (Caucasian under age forty) why Respondent preferred younger employees for first shift she it was up to the supervisor's discretion.*

*"Therefore, 1 believe I was discriminated against because of my age (forty-four) and race (black/ African American) in violation of the South Carolina Human Affairs Law, as amended, the Age Discrimination in Employment Act of 1967, as amended, and Title VII of the Civil Rights Act of 1964, as amended."*

13.     The Plaintiff requested a right to sue from the South Carolina Human Affairs Commission.

14.     That the Plaintiff received a right to sue from the U.S. Equal Employment Opportunity Commission on April 17, 2025.

15.     That the Right to Sue set forth the EEOC issues the following determination:

### *DISMISSAL OF CHARGE*

*The EEOC has granted your request for a Notice of Right to Sue, and more than 180 days have passed since the filing of this charge.*

*The EEOC is terminating its processing of this charge. The EEOC has adopted the findings of the state or local fair employment practices agency that investigated your charge.*

### *NOTICE OF YOUR RIGHT TO SUE*

*This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if*

*you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a*

*claim under state law may be different.)*

*If you file suit, based on this charge, please send a copy of your court complaint to this office.*

16.     That fewer than ninety days have elapsed since the Plaintiff received the Right to Sue on the Plaintiff's charge of discrimination.

## **FACTUAL BACKGROUND**

17.     That the Plaintiff is a resident of the United States and at all relevant times the Plaintiff resided in South Carolina.

18.     That the Plaintiff is an African American female over the age of forty.

19.     The Plaintiff was hired by the Defendant on May 9, 2021, as an Inside Security Contractor. When the Plaintiff began her employment, she was assigned to First Shift.

20.     The Plaintiff was considered an exemplary employee throughout her employment, performing all requirements of her position pursuant to the requests and practices of the Defendant.

21.     During the Plaintiff's employment many positions/promotions were not posted to allow employees to properly apply, interview and be evaluated for the position.  The Defendant showed a blatant favoritism to Caucasian individuals, family and friends.

22.     The Plaintiff was considered an exemplary employee at all times up and until her termination.  The Plaintiff performed her position with the upmost professionalism at all times.

23.     Several managers, employees and supervisors made statements regarding the Plaintiff's performance and professionalism.

24.    In early 2022, the Plaintiff was promoted to Interior Rover in Building 4 (driving a golf cart).  Not long after the promotion the Plaintiff was promoted to a one-day role driving a car, which transitioned into a full-time position from Sunday through Wednesday.  The Plaintiff was praised by management on her excellent memory of vehicles and parking processes and stated that she was the perfect person for the role.

25.    In February of 2022, Mikle Nevels joined the Defendant's site where the Plaintiff was employed.  After arriving at the site Mr. Nevels made the unilateral decision to change the Plaintiff's workdays.  The Plaintiff requested a change in shifts and was informed by Nevels that there was none available.  The Plaintiff requested Sunday through Wednesdays to accommodate her kids.

26.    On October 24, 2022, the Plaintiff received a request from Supervisor Crystal Brown via her official Allied Universal phone to pick up food from the Waffle House with the Defendant's security car.

27.    On December 30, 2022, Brian Mizell treated other employees.  Mr. Mizell posted on social media "Fixing raise some hell today idgaf who runs and tells it but when I see you today be ready...today will either be jail or hell but I'm fine with either I've told you keep my mfer name out your mouth talking shyt that you don't even fuckin know about…"

28.    That the Plaintiff performed all aspects of her position with no discipline or issues in 2022.

29.    In February 2023, the Plaintiff reported discrimination and unfair Treatment to the Defendant's Ethics Hotline.  The Plaintiff specifically complained of violations of policy regarding inconsistency in scheduling, nepotism and unfavorable treatment.  The Plaintiff specifically complained regarding Amber (1st Shift Supervisor), Mikle Nevels (Account Manager) and Brian Mizzell (3rd Shift Supervisor).

30.     After the Plaintiff's complaint to the Ethics Hotline, Mikle Nevels accused the Plaintiff of bullying him.   Nevels later apologized to the Plaintiff, admitting that she was straightforward and not bullying.

31.     On March 2, 2023, the Plaintiff complained to Allied HR that she was being treated differently and discriminated against.   The Plaintiff further complained about the issues regarding nepotism.

32.     Other employees received more favorable treatment and were not terminated for worse actions than the Plaintiff.   These actions of the Defendant show the more favorable treatment provided based on race and age.

33.     On May 7, 2023, Supervisor Brittany Brown instructed the Plaintiff to pick up food from Wendy's and Exxon while she was in route to an off-site job.

34.     On May 23, 2023, the Plaintiff was subjected to differential treatment when another Caucasian Male employee was permitted to split his 12-hour shift with another employee. The Plaintiff had her 12-hour shift taken away rather than being allowed to split it with another employee.

35.     On May 23, 2023, Brian Mizzell made the statement to an employee "Go outside and smoke your weed."  Mizzell was aware of the employees' drug use but failed and refused to follow the policies and procedures of the Defendant regarding drug use by employees.

36.     On September 13, 2023, the Plaintiff again reported discrimination and unfair treatment by Brian Mizell and Mikle Nevels to the Defendant's hotline.

37.     On October 3, 2023, the Plaintiff engaged in a text message conversation with Mikle Nevels regarding his duties and responsibilities of promoting fairness and consistency in the workplace and that the more favorable treatment received by others is a violation of the

policies of the Defendant.   The Plaintiff complained to Nevels specifically about his inability to treat others fairly.

38.     On October 4, 2023, the Plaintiff complained to the account manager and site supervisor that she felt that she was being discriminated against based on her race and was being treated differently based on her race and age.

39.     On October 13, 2023, a younger Caucasian employee left the office to go on break, she did not return after her break and had her brother-in-law call a supervisor stating that she did not feel well and would not be returning.  The Defendant failed to follow procedure as this incident occurred at 12:43 am.  The Defendant treated the younger Caucasian employee more favorably in violation of their policies and procedures and failed to discipline the individual.

40.     On November 14, 2023, the Plaintiff spoke with the Director of Operations, Lacey Green, about unfair treatment and a hostile work environment.

41.     On January 29, 2024, the Plaintiff was instructed to retrieve food for Brittany Brown. Almost every Sunday Brittany Brown would request that the Plaintiff stop and get her food.

42.     On February 27, 2024, the Plaintiff reported another officer's misconduct.  In retaliation for that complaint, the Plaintiff was immediately questioned regarding policy violations which led to her termination.  The Defendant alleges that they received a complaint from a client on February 24, 2024.  The Defendant did not address the issue with the Plaintiff until after she addressed an officer's misconduct.

43.     On February 29, 2024, the Plaintiff was terminated by Mikle Nevels for the following: "Work Rule Violation #1 Leaving Worksites Without Permission from your supervisor or otherwise neglecting your job duties, #7 Unauthorized Use of Company/Customer

Property or Equipment or Company/Customer Vehicle." The Facts Section set forth the following: "This coaching / counseling statement is for violating company policy concerning the use of the Security exterior rover. You have violated the policy #2 by leaving your worksite without obtaining proper permission from your supervisor and neglecting your assigned job duties. This behavior is unacceptable and compromises the security and effectiveness of our operations. You have violated policy #7 by engaging in the unauthorized use of company property, specifically the Security Exterior Rover, for personal purposes. Such actions are not only a breach of trust but also a direct violation of our established protocols. After careful consideration and discussions with Allied HR and upper Allied Management; based on you violating company policy to include your own admission you will be removed from service and terminated effective immediately." The Coaching-Counseling-Disciplinary Notice was signed by Mikle Nevels.

44.    On March 1, 2024, the Plaintiff received a call from Nevels and Allied HR who informed her she was terminated effective immediately. The Plaintiff was further informed she was not to return to HFT premises.

45.    The Plaintiff's termination letter came from Mikle Nevels, Allied Universal, Account Manager, HFT-DC dated 3/1/2024 setting forth the following:

*"This letter will confirm that your employment with Allied Universal is terminated effective 03/01/2024. You are being provided with a Separation Record which gives you specific information regarding this employment separation.*

*"Please return any uniforms in your possession to your local Branch office between the hours of 9am – 3pm, Monday through Friday. Failure to return Allied Universal uniforms*

*may result in the loss of escrow money, as well as possible legal action. If a deduction was withdrawn from your check for a uniform escrow/deposit those monies will be disbursed."*

46.    Other officers that worked for the Defendant that were outside the Plaintiff's protected class were treated more favorably than the Plaintiff and were not terminated for committing the same actions.   On at least two occasions Caucasian individuals committed worse infractions including wrecking a vehicle without discipline and were only removed from the exterior rover position and placed in another position.

47.    The policy sited to by the Defendant was not in effect at the time of the Plaintiff's termination and further there is documented evidence of several employees and management violating the policy and not being terminated.   The Plaintiff was terminated for pretextual reasons for her complaints regarding discrimination, hostile work environment, differential treatment and failure to follow the law.

48.    The Plaintiff was aware that another employee was transferred to another position after having several thousands of dollars of merchandise stolen while she was on site rather than be terminated.   Another example of the Defendant's more favorable treatment of younger individuals.

49.    During the Plaintiff's employment she made a complaint to the Defendant that second shift rover drivers were using the work vehicle to purchase lottery tickets during their shift.   The Plaintiff submitted this complaint to her direct supervisor.

50.    The Plaintiff was accused of using the company vehicle for personal use, which she never did.   The Defendant's management and supervisors requested the Plaintiff make trips to pick up food for them on several occasions.   On many occasions a supervisor traveled with the Plaintiff to sites and had her stop for food for staff.   Further Mizzell was in the car on

one occasion that the Plaintiff was asked by another supervisor to stop at Waffle House to pick up their order.  Therefore, the reason for termination is pretextual as the actions of the Plaintiff were directed by her supervisors.

51.    After the Plaintiff's termination, a twenty-five-year-old Caucasian female was placed in the Plaintiff's position.

52.    After the Plaintiff's termination, the Defendant issued a document for all employees to sign instructing them not to use the vehicles for retrieving food for any reason.

53.    The Defendant has several policies and procedures regarding discrimination, hostile work environment and retaliation.  However, the Defendant failed and refused to follow the policies.  When the Plaintiff followed the policies and procedures the Defendant refused to enforce those policies and retaliated against the Plaintiff for utilizing the policies.

54.    The Plaintiff appealed her termination from employment to the Regional Human Resources Manager within Allied Universal Security Services, Katie Duymovic.  Ms. Duymovic determined that the Plaintiff's termination was warranted because she had abandoned her post.

55.    As a result of the Defendant's failure to follow policy, the Plaintiff was not permitted to apply for several promotions as management

56.    The Plaintiff was replaced with a twenty-five-year-old Caucasian female.

57.    That Defendant wrongfully discriminated against the Plaintiff in violation of Title VII  and 42 U.S.C. 2000, 42 U.S.C. 1981.

58.    That each of the reasons presented by the Defendant was pretextual.

59.    Defendant's actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.

60. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

61. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

62. That the Plaintiff was issued certain policies and procedures by the Defendant.

63. The Defendants violated the policies and procedures by failing to follow the actual policies in place against discrimination, hostile work environment and retaliation.

64. That as a result of the Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity and other intangible injuries for all of which she should be compensated.

65. Defendant engaged in policies and practices which willfully, intentionally, and unlawfully discriminated against Plaintiff on the basis of her race in violation of Title VII and 42 U.S.C. 1981.

66. That the Defendant, treated the Plaintiff significantly differently based on her race.

67. That the Plaintiff treated Caucasian coworkers more favorably. That no one was subjected to the same discrimiantion that the Plaintiff was subjected to.

68. That the Defendant's actions towards the Plaintiff violated the law.

69. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

70. That, as a direct and proximate result of the Defendant's intentional unlawful actions towards the Plaintiff based on the Plaintiff's race, the Plaintiff:

    a. suffered severe emotional distress;

    b.      suffered future lost wages and future lost benefits;

    c.      suffered economic damages;

    d.      Loss of employment;

    e.      Loss of Future employment;

    f.      incurred attorney fees for this action;

    g.      incurred costs of this action; and

    h.      will incur future attorney fees and costs.

71.    That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees previous, future and present, costs of previous future and this action, and other damages such as this Honorable Court deems appropriate and just.

72.    That the Plaintiff's employer discriminated against the Plaintiff based on her race complaints.

73.    That the Defendant is the proximate and direct cause of damage to the Plaintiff.

74.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks compensatory damages including future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

75.    Pursuant to 42 U.S.C. Section 1981A, Plaintiff also seeks to recover punitive damages from Defendant for discriminating against Plaintiff with malice or with reckless indifference to Plaintiff's federal protected rights.

76.    Plaintiff seek all back pay and fringe benefits to which she is entitled under 29 U.S.C. Section 626(b), as well future damages and liquidated damages under the act.

77. As Plaintiff is seeking damages under 42 U.S.C. 1981A and 29 U.S.C. Section 626(b) Plaintiff also demands a jury trial as to all claims properly tried to a jury pursuant to 42 U.S.C. Section 1981(A)(c)(1) and pursuant to 29 U.S.C. Section 626 (c)(2).

78. Pursuant to 42 U.S.C. Section 1988(c) and 42 U.S.C. Section 2000e-5(k), Plaintiff seeks her attorney's fees in bringing this action, including expert witness fees, and further seeks her costs associated with bringing this action pursuant to 28 U.S.C. 1920 of the Federal Rules of Civil Procedure, along with prejudgment and post-judgment interest pursuant to the law.

## **FOR A FIRST CAUSE OF ACTION**

## **RACE DISCRIMINATION IN VIOLATION OF TITLE VII AND 42 U.S.C. 1981**

79. That Paragraphs one (1) through seventy eight (78) are hereby incorporated verbatim.

80. That the Plaintiff was considered an exemplary employee.

81. That the Plaintiff was treated differently based on her race.  That other Caucasian employees were treated more favorably and not subjected to the same discipline.

82. That the Defendant allowed the Plaintiff to be discriminated against based on her race in violation of their own policies and procedures.

83. That the Plaintiff reported the discrimination.  That the Defendant failed and refused to correct the behavior.  That the behavior became worse after the Plaintiff's reports.

84. That the Defendant allowed the Plaintiff's supervisor to treat Caucasian employees more favorably without repercussions.

85. That the Defendants discriminated against the plaintiff was based on her race.

86. That the Defendants took adverse employment action against the Plaintiff by:

(a)     Failing to protect the Plaintiff from a Racially Hostile work environment; and

(b)     Refusing to enforce its own policies concerning discipline of employees engaging in harassing comments.

(c)     Allowing the Plaintiff to be discriminated against, disciplined, and terminated from her employment.

87.     That the Defendants subjected the Plaintiff to discrimination in violation of the law.

88.     That, as a direct and proximate result of the Defendants' intentional, unlawful, and retaliatory actions, the Plaintiff:

(a)     Suffered severe emotional distress.

(b)     Suffered lost wages and benefits.

(c)     Suffered future lost wages and benefits.

(d)     Incurred attorney's fees and costs of this action.

89.     That the Plaintiff is entitled to an award of damages in the amount of actual damages, compensatory damages, consequential damages, punitive damages, attorney's fees, costs of this action, and other damages such as this Honorable Court deems appropriate and just.

## FOR A SECOND CAUSE OF ACTION

## RETALIATION FOR COMPLAINTS REGARDING RACE DISCRIMINATION, AGE DISCRIMINATION AND HOSTILE WORK ENVIRONMENT COMPLAINTS

90.     That Paragraphs one (1) through eighty-nine (89) are hereby incorporated verbatim.

91.     That the Plaintiff was an employee according to the law of the State of South Carolina, Federal Law including but not limited to Title VII and ADEA.

92.     That the Defendant was an employer as defined by Title VII and the ADEA.

93. That the Plaintiff has filed complaints regarding race and age discrimination to management, Human Resources and Ethics.  As a result of those complaints the Plaintiff was disciplined and terminated from employment.

94. As a result of those complaints the plaintiff has been treated differently and subjected to retaliation.

95. That the Plaintiff complained of discrimination based on her race, age, hostile work environment and retaliation.

96. That the Defendant retaliated against the Plaintiff by placing her in the most hostile work environment, disciplining her and terminating her from employment.

97. That as a result of the Plaintiff's complaints the Plaintiff suffered retaliation for each of her complaints.

98. That the Plaintiff was considered an exemplary employee by her supervisors until the Plaintiff started reported discrimination, reported hostile work environment, and reported retaliation in violation of Federal Law, State Law and policies and procedures.

99. As a result of the Plaintiff's complaints regarding discrimination based on her Race and hostile work environment based on her previous complaints the Defendant retaliated against the Plaintiff.

100. The Defendant's actions described herein were intentional and inflicted upon Plaintiff to insure severe mental and emotional distress.

101. As a result of Defendant's actions, Plaintiff has suffered irreparable injuries, including but not limited to loss of pay, benefits and other economic losses, emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, and other intangible injuries for all of which she should be compensated.

102. That the Defendant is the direct and proximate cause of injury to the Plaintiff.

103. That the Plaintiff is entitled to an award of damages from the Defendant. That the Plaintiff is entitled to recover damages from the Defendant in the amount of actual damages, consequential damages, punitive damages, reasonable attorney's fees, the costs of this action and all other damages available pursuant to Title VII and ADEA.

## FOR A THIRD CAUSE OF ACTION

## HOSTILE WORK ENVIRONMENT

104. That Paragraphs one (1) through one hundred and three (103) are hereby incorporated verbatim.

105. That the Plaintiff was an employee of the Defendant in accordance with Title VII and ADEA.

106. That the Defendant is an employer in accordance with Title VII and ADEA.

107. That the Defendant subjected the Plaintiff to a hostile work environment.

108. That the Plaintiff's work environment was abusive, to the point of severe and pervasive.

109. The Plaintiff was subjected to discrimination based on her Race and Age.

110. That the Defendant failed and refused to address the situation.

111. That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race and Age.

112. That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff to.

113. That the Plaintiff has been damaged as a result of the Defendant work environment.

114. That the Defendant is the direct and proximate cause of damage to the Plaintiff.

115.    That the Plaintiff is entitled to damages from the Defendant for their violation f title VII and ADEA in the amount of actual damages, compensatory, consequential, punitive damages and attorney's fees and costs.

### FOR A FOURTH CAUSE OF ACTION

### AGE DISCRIMINATION IN VIOLATION OF ADEA

116.    That Paragraphs one (1) through one hundred and fifteen (115) are hereby incorporated verbatim.

117.    That the Plaintiff was an employee of the Defendants.

118.    That the Defendant is an employer in accordance with the ADEA.

119.    That the Defendant discriminated against the Plaintiff based on her age.

120.    That the Defendant treated younger individuals more favorably than the Plaintiff.

121.    That the Defendant failed and refused to address the situation.

122.    That the Plaintiff suffered severe emotional distress as a result of the Defendant's hostile work environment based on the Plaintiff's Race.

123.    That the Plaintiff's severe emotional distress was foreseeable as a result of the severe and pervasive work environment that the Defendant subjected the Plaintiff.

124.    That the Plaintiff has been damaged as a result of the Defendant work environment.

125.    That the Defendant is the direct and proximate cause of damage to the Plaintiff.


126.    That the Plaintiff is entitled to damages from the Defendant for their violation of ADEA in the amount of actual damages, compensatory, consequential, punitive damages and attorney's fees and costs.

### PRAYER FOR RELIEF

WHEREFORE plaintiff prays that this Honorable Court:

A. Accept jurisdiction over this matter, including the pendent claim;

B. Empanel a jury to hear and decide all questions of fact;

C. Award the Plaintiff lost wages, future lost wages, lost benefits and future lost benefits;

D. Award to plaintiff compensatory and consequential damages against the defendant;

E. Award to plaintiff punitive damages against the defendant for their malicious and spiteful pattern of racial discrimination;

F. Award to plaintiff All damages available to the plaintiff damages against the defendant for their malicious discrimination against the plaintiff in violation of the Title VII and the ADEA;

G. Award to plaintiff the reasonable attorneys' fees and costs incurred in the prosecution of this matter;

H. Award all damages available to the Plaintiff pursuant to Federal and State Law;

I. Permanently enjoin the defendants, their assigns, successors, agents, employees and those acting in concert with them from engaging in racia discrimination, disparate treatment or retaliation against plaintiff and

J. enter any other order the interests of justice and equity require.

HUNT LAW LLC

*s/Bonnie Travaglio Hunt*
Bonnie Travaglio Hunt
Attorney for the Plaintiff
Federal Bar Number 7760
SC Bar #12341
HUNT LAW LLC
4000 Faber Place Drive, Suite 300
North Charleston SC 29405
Post Office Box 1845, Goose Creek, SC 29445
May 20, 2025                    (843)553-8709